UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                 :

**MISS JONES LLC,**
                                 :

               Plaintiff,       :

                                 :   **MEMORANDUM DECISION AND**
                                       **ORDER**
        – against –         :

                                 :   17-CV-716 (AMD) (LB)

**ABDUL SHAHID** and **NEW YORK CITY**
**ENVIROMENTAL CONTROL BOARD,**  :

                                 :

             Defendants.    :
-------------------------------------------------------------- X
**ANN M. DONNELLY**, United States District Judge:

On February 8, 2017, Miss Jones LLC ("Miss Jones") brought this action against Abdul Shahid and the New York City Environmental Control Board[1] seeking to foreclose a mortgage encumbering property located at Block 9950, Lot 44, on the Tax Map of the County of Queens, also known as 87-06 Dalny Road, Jamaica Estates, New York (the "Property"). (ECF No. 10 ¶ 1.) Before the Court are the parties' cross motions for summary judgment. (ECF Nos. 90, 93.) For the reasons explained below, the plaintiff's motion is granted, and the defendant's motion is denied.

## BACKGROUND[2]

On March 2, 2005, the defendant executed a note evincing a loan made to him by JPMorgan Chase Bank N.A. ("Chase") in the principal amount of $100,000 ("Original Note").

---

[1] The New York City Environmental Control Board has not appeared in this action and has failed to answer or otherwise respond to the complaint.

[2] On a motion for summary judgment, the Court's consideration is limited to factual material that would be admissible evidence at trial. *Local Unions 20 v. United Bhd. of Carpenters and Joiners of Am.*, 223 F. Supp. 2d 491, 496 (S.D.N.Y. 2002). Factual allegations that are disputed without a citation to admissible evidence are deemed admitted, as long as they are also supported by the record. Local Civ. R. 56.1; *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Factual allegations that are not disputed are also deemed admitted, as long as they are supported by the record. *Id.* I disregard any

(Defendant's 56.1 Counterstatement (ECF No. 93-21) ("Def.'s 56.1 Counterstatement") ¶¶ 1-2; Plaintiff's 56.1 Statement (ECF No. 92) ("Pl.'s 56.1 Statement") ¶ 3.)  Chase extended another loan to the defendant on November 2, 2005, for $100,000, and the defendant executed a note to Chase for a principal, consolidated, sum of $200,000 (the "Consolidated Note"), secured by a mortgage on the Property (the Consolidated Note and the mortgage are the "Loan").  (Def.'s 56.1 Counterstatement ¶¶ 2-3; Pl.'s 56.1 Statement ¶¶ 2-3; ECF Nos. 90-2, 90-3.)  The plaintiff came into possession of the Consolidated Note and the mortgage, although the parties disagree over when the possession took place.  (Pl.'s 56.1 Statement ¶ 10; Defendant's 56.1 Statement (ECF No. 93-20) ¶¶ 8.)  The plaintiff argues that it became the holder of the Consolidated Note and the mortgage on April 2, 2016 (ECF No. 90-18 at 11), while the defendant argues that the plaintiff did not become the holder of the Consolidated Note and the mortgage until September 29, 2016. (ECF No. 93-23 at 14.)  The defendant defaulted on the Loan, although the parties disagree about when the default occurred.  (Def.'s 56.1 Counterstatement ¶ 4.)  According to the amended complaint, as of August 12, 2016, the unpaid principal on the Loan was $199,277.60, plus interest and late charges.  (ECF No. 10 ¶ 33.)

The plaintiff commenced this action to foreclose on February 8, 2017, and filed an amended complaint on February 17, 2017.  (ECF No. 10.)  The defendant filed his final amended answer on January 3, 2022 (ECF No. 89), asserting the following affirmative defenses: that the plaintiff's suit is barred by the statute of limitations, that the plaintiff did not comply with §§ 1303 or 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL"), and that the Loan is predatory.  (ECF No. 8 at 2-10.)  The plaintiff moves for summary judgment, seeking

---

arguments in the Rule 56.1 statements.  *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377, 2019 WL 1435882, at \*2 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

a judgment of foreclosure and to strike the defendant's second amended answer.  (ECF No. 90 at 1.)  The defendant opposes the plaintiff's summary judgment motion, cross-moves for summary judgment and to strike the affidavit of Joni Yorks.  (ECF No. 93.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions show that there is "no genuine dispute as to any material fact," and that the movant is therefore "entitled to judgment as matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The movant has the "burden of showing the absence of any genuine dispute as to a material fact."  *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).  "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial."  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Calrett*, 477 U.S. 317, 324 (1986)).  "The non-moving party 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [its] version of the events is not wholly fanciful.'"  *Id.* (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).  Nevertheless, the court is to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

## DISCUSSION

### I.    The Plaintiff's Motion for Summary Judgment

"Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage."  *Windward Bora LLC*

*v. Baez*, No. 19-CV-5698, 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) (internal quotation marks and citation omitted); *see also Builders Bank v. Charm Devs. II, LLC*, Nos. 09-CV-3935 & 09-CV-4410, 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010) ("[S]ummary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." (citation omitted)).  "Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has demonstrated its prima facie case of entitlement to judgment.  The burden then shifts to the defendant to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims."  *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414-15 (E.D.N.Y. 2018) (citations omitted).

There does not appear to be a dispute that the plaintiff has established a *prima facie* case entitling it to judgment.  The plaintiff provided proof of the note and the mortgage at issue, both dated November 2, 2005, in the amount of $200,000, executed by Abdul Shahid.  (ECF Nos. 90-2, 90-3.)  The defendant admits that he executed the note to Chase.  (ECF No. 93-21 at 2.)  The plaintiff also attaches records of the mortgage assignment, indicating that Miss Jones LLC is the current holder of the note and mortgage.  (ECF No. 90-4.)  Finally, the plaintiff has demonstrated that the defendant defaulted on the loan (ECF No. 90-5); the defendant admits to the default.  (ECF No. 93-21 at 3.)  Therefore, the plaintiff has made out a *prima facie* case that it is entitled to summary judgment on the foreclosure action.

**II.    The Defendant's Affirmative Defenses**

**a.    Statute of Limitations**

Under New York law, the statute of limitations for a mortgage-foreclosure action is six years.  N.Y. C.P.L.R. § 213 ("'[A]n action upon a bond or note, the payment of which is secured

by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a

mortgage of real property, or any interest therein' shall 'be commenced within six years.'").

"The law is well settled that, even if a mortgage is payable in installments, once a mortgage debt

is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire

debt." *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021) (citation omitted).

If the mortgage and note make acceleration an option, "some affirmative action must be taken

evidencing the holder's election to take advantage of the accelerating provision . . . the borrower

must be provided with notice of the holder's decision to exercise the option to accelerate the

maturity of a loan" and such notice must be "clear and unequivocal." *Wells Fargo Bank,*

*N.A. v. Burke*, 94 A.D.3d 980, 982-83 (2d Dep't 2012) (citations omitted).

  The defendant argues that he received an "Acceleration Warning (Notice of Intent to

Foreclose)" letter from Chase on March 12, 2009 (the "Chase Letter"), which included a 30-day

demand to cure and informed him that Chase would accelerate the loan and the balance would be

due it its entirety if he did not pay the balance.  (ECF No. 93-11.)  In particular, the letter advises

the defendant: "If you fail to cure the default within 30 days from the date of this notice, [Chase]

intends to accelerate the maturity of the loan . . . declare all sums secured by the Mortgage

immediately due and payable, and commence foreclosure proceeding which could lead to

[Chase] or someone else acquiring ownership of the Property."  (ECF No. 93-11 at 1.)  The

defendant says that by sending this letter, Chase accelerated the mortgage debt and triggered the

statute of limitations.  The plaintiff argues that the Chase Letter is merely a "warning of future

acceleration rather than a clear and unequivocal demand for payment of the entire mortgage

debt," and thus, did not accelerate the entire mortgage or trigger the statute of limitations.  (ECF

No. 90-18 at 9.)  Additionally, the plaintiff argues that the Chase Letter constitutes inadmissible hearsay that the Court cannot consider.  (*Id.* at 10.)

Hearsay is an out of court statement offered as evidence to prove the truth of the matter asserted and is typically inadmissible.  Fed. R. Evid. 801(c), 802.  However, there is an exception for business records that are properly authenticated through the certification of a custodian or another witness.  Fed. R. Evid. 803(6).  Here, the defendant submitted the Chase Letter without any certification.  The plaintiff argues—without contesting the Chase Letter's authenticity—that without the certification, the Chase Letter is inadmissible.  However, "proof of authentication may be direct or circumstantial."  *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008)).  While the simplest form of "authentication is through the testimony of a witness with knowledge that a matter is what it is claimed to be . . . This is by no means exclusive, however: Rule 901 provides several examples of proper authentication techniques in different contexts."  *Id.* (internal quotation marks and citations omitted).  A document can be authenticated through its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item."  Fed. R. Evid. 901(b)(4).  The relevant circumstances support the authenticity of the Chase Letter, which bears sufficient characteristics that it is what the defendant says it is.  The parties do not dispute that the defendant had a loan with Chase, the Chase Letter lists the address of the Property, it lists the account number as "100001415740201439," which matches the account number on the loan documents: "415740201439" (ECF Nos. 93-12, 93-13, 93-14), and the Chase Letter—and the envelope accompanying it—bear the Chase logo.  (ECF No. 93-11.)  Therefore, the Chase Letter is admissible.

The Chase letter does not establish that the action is time barred.  The Consolidated Note provided that the noteholder had the option to accelerate the loan if the defendant did not meet the repayment terms of the agreement.  (ECF No. 93-13 at 3 ("We can terminate your Credit Line Account and subject to any notice requirement or other limitation of applicable law require you to pay us the entire outstanding balance in one payment.").)  A fair reading of the letter is that Chase was advising the defendant that it would accelerate the loan if the plaintiff did not pay the past due amount, $3,833.00.

New York courts consistently hold that an acceleration must be 'clear' and 'unequivocal' to take effect.  Language that the noteholder "will" take action does not communicate a clear and unequivocal notice of acceleration.  *Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 26-27 (2021) (finding a default letter that "did not seek immediate payment of [an] entire, outstanding loan," "referred to acceleration only as a future event, indicating the debt was not accelerated at the time the letter was written," and stated that the debt "will be accelerated" for failure to cure but also indicated such failure "may" result in the foreclosure of the property, did not accelerate the debt); *see also HSBC Bank USA, N.A. v. King*, 193 A.D.3d 694, 695 (2d Dep't 2021) ("A 'letter discussing acceleration as a possible future event . . . does not constitute an exercise of the mortgage's optional acceleration clause.'" (quoting *21st Mtge. Corp. v. Adames*, 153 A.D.3d 474, 475 (2d Dep't 2017)).

Chase warned the defendant of a "possible future event," and did not seek immediate payment of the entire outstanding loan.  Rather, it advised the defendant that it intended to "accelerate the maturity of the loan . . . declare all sums secured by the Mortgage immediately due and payable, and commence foreclosure proceeding which could lead to [Chase] or someone else acquiring ownership of the Property" if he did not "cure the default within 30 days from the

7

date of this notice." (ECF No. 93-11 at 1.) *See U.S. Bank N.A. v. Singer*, 192 A.D.3d 1182, 1187 (2d Dep't 2021) (finding a letter that informed a mortgagor that "if funds are not received by the above stated date, we will proceed to automatically accelerate your loan," was merely an expression of future intent that fell short of an actual acceleration); *JPMorgan Chase Bank, N.A. v. Garcete*, 203 A.D.3d 1149, 1149-51 (2d Dep't 2022) ("[An] Acceleration Warning (Notice of Intent to Foreclose) . . . which stated that the loan was in default and if the defendant failed to cure the default within 30 days, the plaintiff intend[ed] to accelerate the maturity of the Loan . . . merely discussed acceleration as a possible future event." (quotation marks omitted)). Accordingly, the Chase Letter did not accelerate the debt and trigger the statute of limitations. The defendant's claim that the action is barred by the statute of limitations is dismissed.

**b.      Failure to Provide Notice Pursuant to RPAPL § 1304**

"Pursuant to RPAPL [§] 1304(1), at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers at the property address and any other address of record, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower. The statute requires that such notice be sent by registered or certified mail, and also by first-class mail, to the last known address of the borrower. Strict compliance with RPAPL [§] 1304 notice to the borrower or borrowers is a condition precedent to the commencement of a foreclosure action." *U.S. Bank Trust, N.A. v. Mehl*, 195 A.D.3d 1054, 1055 (2d Dep't 2021) (internal quotation marks and citations omitted). "A plaintiff in a foreclosure action can demonstrate compliance with RPAPL § 1304 with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure." *Miss Jones, LLC v. Viera*, No. 18-CV-1398, 2020 WL 1527141, at *1 (E.D.N.Y.

Mar. 31, 2020) (internal quotation marks and citation omitted).  "[P]roof of a standard office mailing procedure gives rise to a presumption that a notice was received, although that presumption may be rebutted by 'a showing that [the] routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed.'"  *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 533 (2d Cir. 2020) (quoting *Nassau Ins. Co. v. Murray*, 46 N.Y.2d 828, 830 (1978)).

According to the plaintiff, proof of the mailing can be demonstrated by "standard office practice."  (ECF No. 90-18 at 12.)  The plaintiff submits the affidavit of Joni Yorks, an asset manager for SN Servicing Corp. ("SN"), the plaintiff's loan servicer for the Loan, (ECF No. 90-15 ¶ 1), in which Ms. Yorks asserts that "[SN's] standard mailing procedure for mailing notices required pursuant to RPAPL § 1304 is to create the RPAPL § 1304 notices utilizing the address and borrower information contained in the computer system.  [SN's] standard practice is to generate separate § 1304 notices to be sent by registered or certified mail and also by first-class mail to the last known address of each borrower, and to the residence which is the subject of the mortgage."  (*Id.* ¶ 4.)  The "information contained on each notice is then entered into a mailing log" and the notices are then hand delivered to the United States Postal Service, who executes SN's mailing log and stamps the date that the notices are received.  (*Id.* ¶ 5.)  In this case, the RPAPL § 1304 notice was generated and mailed by SN employee Angela ("Angie") Christie on August 12, 2016.  (*Id.* ¶ 6.)

The New York Court of Appeals has addressed the "showing a borrower must make to *rebut* the presumption created through proof of a standard office mailing procedure in the context of RPAPL 1304 notices,"  *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556 (2021) (emphasis in original), holding that "to rebut the presumption, there must be proof of a material deviation

from an aspect of the office procedure that would call into doubt whether the notice was properly mailed, impacting the likelihood of delivery to the intended recipient.  Put another way, the crux of the inquiry is whether the evidence of a defect casts doubt on the reliability of a key aspect of the process such that the inference that the notice was properly prepared and mailed is significantly undermined.  Minor deviations of little consequence are insufficient."  *Id.* at 557.

The plaintiff established a standard office practice and procedure, which supports the presumption of receipt.  The defendant speculates about potential "deviations," but his objections do not undermine the presumption that the notice was properly prepared and mailed.  For example, the defendant cites the fact that the mailing log describes the notice as an "attorney demand" rather than a notice.  (*See* ECF No. 90-15 at 21-22.)  The defendant argues that the RPAPL § 1304 notice provided by the plaintiff (ECF No. 90-15, Exhibit A), was not issued by an attorney, and is therefore not the "Attorney Demand" referenced in SN's mailing log.  (ECF No. 93-23 at 7-8.)  According to the defendant, this demonstrates that SN mailed him an "Attorney Demand" instead of a RPAPL § 1304 notice.  (*Id.*)  However, Ms. Yorks did not say that the notices are titled "RPAPL § 1304 notices" in the mailing log; rather, she said that the information on each notice is entered into a mailing log.  (ECF No. 90-15 ¶ 5.)  While the mailing log does not appear to include everything on the § 1304 notice, it refers the reader to the "Quote History for unofficial breakdown detail," and the entry containing that statement appears to be cut off.  (ECF No. 90-15 at 21.)  This does not constitute a "material deviation."

The defendant also objects that the mailing log does not reflect that the notice was sent by first-class mail.  However, this is not a material deviation.  The mailing log does not make any reference to the method used to mail the notice, nor did Ms. Yorks say that SN's practice was to list the mailing methods.  Next, the defendant argues that the two postal receipt cards do not have

a post office stamp or the defendant's signature.  This is not significant, because the certified

mailing receipts are stamped with the tracking numbers for the mailings, and bear the August 12,

2016 date.  (ECF No. 90-15 at 16-17.)  Moreover, Ms. Yorks did not say that SN's standard

procedure was to get the addressee's signature.

Finally, the defendant argues that the tracking number associated with at least one of

those postal receipts shows that the notice was not delivered because the United States Postal

Service's ("USPS") tracking information associated with the certified mailing lists it as "in-

transit."  (ECF No. 93-19.)  The defendant does not cite any cases in which a court found that the

RPAPL § 1304 notice was not sufficient because it was marked "in transit," and the Court is not

aware of any.  *Cf. Empire Cmty. Dev., LLC v. Giambalvo-West*, 19-CV-5341, 2020 WL

9813022, at *4-5 (E.D.N.Y. Mar. 6, 2020) (finding § 1304 compliance properly demonstrated

through proof of the actual mailings even though one of the mailings was "returned as

unclaimed" according to the USPS tracking number associated with it).  Indeed, the rule provides

that "[n]otice is considered given as of the date it is mailed."  N.Y. R.P.A.P.L. § 1304(2).

Moreover, the Court takes judicial notice of the USPS's "frequently asked questions" page about

its tracking procedures.  *See, e.g., Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.

Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding it "clearly proper to take judicial notice" of

"documents retrieved from official government websites"); *see also Cangemi v. United States*,

13 F.4th 115, 124 n.4 (2d Cir. 2021).  As explained on the USPS's website "[t]he absence of a

delivery scan on a mailpiece does not necessarily indicate that the item was not delivered.  It is

possible the piece was delivered but the scan was not captured."  *See* U.S. Postal Serv., "What If

My Item Was Received, But Not Scanned As Delivered?," available at

https://faq.usps.com/s/article/USPS-Tracking-The-Basics#How_can_I_use_USPS_Tracking (last

visited September 28, 2022).  Accordingly, the defendant has failed to rebut the presumption that

the notice was received, and his motion for summary judgment on RPAPL § 1304 notice ground

is denied.

**Motion to Strike**

The defendant also argues that the Court should strike Ms. Yorks's affidavit because the

plaintiffs did not identify Ms. Yorks or Angela Christie, [3] as required by Rule 26, before it filed

its first summary judgment motion.  (ECF No. 93-23 at 9.)  The plaintiff responds that the

defendant was aware of "Angie's" identity because she signed the certified mailing receipts.  The

plaintiff also maintains that the defendant knew that SN was the plaintiff's loan servicer and

could have sought the deposition of the "person most knowledgeable" at SN.  (ECF No. 90-18 at

14-15.)  The Court addressed this subject at a December 2021 status conference.  After some

discussion, the Court advised counsel for the defendant that it would consider the evidence

because it "sound[s] to me like it does not matter one way or the other to you."  Counsel

responded, "It doesn't. It doesn't."

 "A party that without substantial justification fails to disclose information required by

Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a

hearing, or on a motion any witness or information not so disclosed."  Fed. R. Civ. P. 37(c)(1).

"When considering whether to exclude evidence pursuant to Rule 37, courts in this Circuit must

consider (1) a party's explanation for the failure to comply with the Federal Rules, (2) the

importance of the evidence, (3) the prejudice suffered by the opposing party of having to prepare

to meet the new evidence, and (4) the possibility of a continuance."  *Richmond v. Gen. Nutrition*

---

[3] The defendant also takes issue with the plaintiff's failure to identify Angela Christie as a potential
witness (ECF No.  93-23 at 8-11), but the plaintiff does not submit any testimony by Ms. Christie.

*Centers Inc.*, No. 08-CV-3577, 2012 WL 762307, at *6 (S.D.N.Y. Mar. 9, 2012) (internal quotation marks omitted).  The purpose of the rule is to prevent "sandbagging" an opposing party with new evidence.  *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000).  Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with caution.  *Ventra*, 121 F. Supp. 2d at 332.

The plaintiff did not comply with Rule 26, which requires parties to disclose "the name . . . of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  The plaintiff did not submit Ms. Yorks's affidavit for impeachment purposes and should have identified her or notified the defendant that it would be calling on a corporate representative of SN.  Additionally, the evidence at issue is not inconsequential, because it demonstrates that there was compliance with RPAPL § 1304.  However, there is little if any prejudice to the defendant under these circumstances.  The defendant was on notice that an SN employee was a potential witness when he was served with the RPAPL §1304 notice, which was on SN letterhead and advised the defendant that SN was the plaintiff's loan servicer.  *See Blake v. City of New York*, No. 05-CV-6652, 2007 WL 1975570, at *5 (S.D.N.Y. July 6, 2007) (denying motion to strike filed with summary judgment motion where plaintiffs were on notice that affiant was a potential witness when his name was produced on documentary evidence during discovery and the plaintiffs failed to depose him).  Accordingly, the defendant could have asked to depose SN's corporate representative before the close of discovery.  Additionally, in its January 2019 response to the defendant's motion for summary judgment, the plaintiff represented that its "loan servicer mailed the pre-foreclosure notice," and that it would be using "sworn statements which attest[] to proper mailing of the notice based on admissible business

13

records." (ECF No. 45 at 3.)  This is not the "sandbagging" scenario that the rule is meant to prevent.  Indeed, the defendant had over three years to prepare for the testimony at issue, or to request that discovery be re-opened.  Moreover, parties have submitted, withdrawn and amended their motions more than once.  In short, the defendant has not suffered any prejudice, so his motion to strike is denied.

### c.      Compliance with RPAPL § 1303

"RPAPL § 1303 requires any party seeking to foreclose on a mortgage encumbering residential real property to provide notice to any tenant of a dwelling unit." *Plenitude Capital LLC v. Utica Ventures LLC*, No. 18-CV-2702, 2019 WL 4014840, at *4 (E.D.N.Y. June 11, 2019) (citing RPAPL §§ 1303(1), 1303(5)) (internal quotations marks omitted).  "The notice requirement protects not only those with formal lease agreements, but also any person who, at a specified time, is a party to an oral or implied rental agreement with the mortgagor and obligated to pay rent to the mortgagor or such mortgagor's representative, for the use or occupancy of one or more dwelling units of a residential real property." *Id.* (internal quotation marks and citations omitted).

The defendant does not dispute that he received notice pursuant to § 1303; instead, he claims that "at the time the within action was commenced, a tenant resided at the Premises," and the plaintiff did not demonstrate that § 1303 notice was given to the tenant.  (ECF No. 93-23 at 13.)  The defendant, however, does not identify this tenant, say how long the tenant lived at the property, what the tenant paid in rent, whether there was a lease agreement with the tenant or submit a copy of a lease.  The sole support for the tenant claim is a single line: "[i]n fact, a tenant was living in my lower level."  (ECF No. 93-1 ¶ 57.)  The defendant did not say anything about a tenant at his deposition; on the contrary, he testified that "since I bought this house, I've been living here with my family."  (ECF No. 90-17 at 19.)

While a court deciding a summary judgment motion "may not make credibility determinations or weigh the evidence," "[a] party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). "[S]elf-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." *Dowd v. City of New York*, No. 11-CV-9333, 2012 WL 5462666, at *1 (S.D.N.Y. Nov. 5, 2012); *see also Cont'l Plants Grp., LLC v. Alpha Int'l, Inc*., No. 21-CV-8677, 2022 WL 2118200, at *5 n.3 (S.D.N.Y. June 13, 2022) (finding that self-serving assertions are not "sufficient to create a genuine dispute of material fact for summary judgment purposes, when [they are] supported by no other evidence"). The defendant's conclusory and unsubstantiated allegation that he had a tenant does not raise a triable issue of fact about whether the plaintiff violated RPAPL §1303, and that claim is dismissed.

> **d.**  **Whether The Plaintiff Served RPAPL Notices Before It Owned the Consolidated Note**

The defendant argues that the plaintiff served the RPAPL notices before it became the owner of the Loan. The plaintiff responds that it was the holder of the Loan on April 2, 2016 and received the written assignment of the mortgage on September 29, 2016. (ECF No. 90-18 at 11.) According to the defendant, the plaintiff became the owner of the Loan only when it received the written assignment. (ECF No. 93-23 at 14-15.) However, the defendant cites no authority, and the Court cannot locate any, for the proposition that RPAPL notices are ineffective if served before an entity becomes the owner of a mortgage and note.

The plaintiff asserts that it served the defendant with the RPAPL §1304 notice on August 12, 2016 (ECF No. 90-18 at 12), and the RPAPL §1303 notice on March 13, 2017. (ECF No. 90-18 at 16.) While a plaintiff in a foreclosure action must be the holder or assignee of the

underlying note at the commencement of the action, no such standing requirement exists for the §§ 1303 and 1304 notices.  Moreover, the general purpose of §§ 1303 and 1304 notices is to ensure that borrowers receive "substantive notice of their rights."  *CIT Bank, N.A. v. Anderson*, No. 16-CV-1712, 2019 WL 3842922, at *3 (E.D.N.Y. Aug. 14, 2019); *see also Wells Fargo Bank, N.A. v. Yapkowitz*, 199 A.D.3d 126, 131 (2d Dep't 2021) (The purpose of RPAPL § 1304 "is to aid the homeowner in an attempt to avoid litigation" by providing an "additional period of time [for distressed homeowners and their lenders] . . . to work on a resolution" (citation omitted)).  The defendant does not object to the content of the notices; he only questions whether the plaintiff was properly holding the note when the notices were sent.  Nor does the defendant dispute that the plaintiff had standing as the holder of the Consolidated Note and the mortgage when it commenced the litigation.  Accordingly, this defense is stricken.

> ### e.       Whether The Consolidated Note is Predatory

The defendant also argues that the terms of the Loan violated federal predatory lending laws, Truth in Lending Act ("TILA")[4] and Home Ownership and Equity Protection Act ("HOEPA").  These arguments are unpersuasive.  HOEPA applies when a mortgage loan satisfies five requirements: (1) the mortgage loan must be a consumer credit transaction, (2) it must be a consumer credit transaction with a creditor, (3) it must be secured by the consumer's principal dwelling, (4) it must be a second or subordinate residential mortgage, not a residential

---

[4] The defendant contends that the "central question . . . is whether plaintiff's predecessor-in-interest violated public policy under HOEPA."  (ECF No. 93-23 at 17.)  The defendant also cites TILA and alleges that he "received no disclosure as to the risk of accepting the additional credit and it was extended without warnings or meaningful inquiry into credit worthiness."  (ECF No. 93-23 at 18.)  This is not supported by the record.  Chase sent the defendant a notice of his credit score (ECF No. 93-8), and gave him disclosure statements.  (ECF Nos. 93-12, 93-13, 93-14.)  Moreover, Chase disclosed that the "Agreement is secured by a consumer Mortgage . . .  on real property located in QUEENS, County, State of New York."  (ECF No. 93-13 at 2.)  To the extent that the defendant makes a TILA claim, that claim is dismissed.

mortgage transaction, a reverse mortgage transaction, or a transaction under an open credit plan, and (5) either the annual percentage rate of interest for the loan transaction exceeds certain levels or the total points and fees payable by the borrower at or before closing will exceed the greater of (i) 8 percent of the total loan amount; or (ii) [$510]. *Nelson v. JPMorgan Chase Bank, N.A.*, No. 07-CV-2055, 2010 WL 11626708, at *2 (E.D.N.Y. Mar. 23, 2010) (internal quotation marks and citation omitted); (ECF No. 93-23 at 21.)  The parties agree that the mortgage loan at issue meets the first three requirements; they disagree about the last two.  According to the defendant, the loan is a "closed end" extension of credit, and the points and fees he had to pay at or before closing exceeded $510.  (ECF No. 93-23 at 19-21.)  The plaintiff responds that the loan is a home equity line of credit which is an open-ended line of credit not subject to HOEPA.  (ECF No. 90-18 at 17-18.)[5]

i.  *The Consolidated Note is an Open-Ended Line of Credit*

"A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments and includes a completed loan such as a mortgage or car loan.  By contrast, an open-end credit transaction is one in which the creditor reasonably contemplates repeated transactions, . . . and . . . provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." *McAnaney v. Astoria*

---

[5] The plaintiff's argument that the defendant's predatory loan defense is barred by the statute of limitations is unavailing.  The defendant raises HOEPA as an affirmative defense, which is not barred by the statute of limitations. *Gray v. Capstone Fin.*, No. 20-CV-00896, 2020 WL 6526086, at *7 n.7 (N.D.N.Y. Sept. 22, 2020) ("Section 1640(e) also provides that '[t]his subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.'" 15 U.S.C. § 1640(e). As a result, recoupment may be asserted after the limitations period when used as a defense to a debt collection action.").  "HOEPA is an amendment to TILA, and therefore governed by the same statute of limitations." *Maropakis v. Bank of N.Y. Mellon Tr. Co., N.A.*, No. 13-CV-4744, 2015 WL 13742419, at *3 (E.D.N.Y. May 4, 2015).

*Fin. Corp.*, No. 04-CV-1101, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008) (internal

quotation marks omitted).  Traditionally, home equity lines of credit are characterized as open-

ended and exempt from HOPEA.  *Nelson v. JP Morgan Chase Bank, N.A.*, 707 F. Supp. 2d 309,

313 n.6 (E.D.N.Y. 2009); *see also Stein v. JP Morgan Chase Bank,* 279 F. Supp. 2d 286, 287,

291 n.3 (S.D.N.Y. 2003) (finding a home equity line of credit to be open-ended); *Rendler v.*

*Corus Bank, N.A.*, 272 F.3d 992, 994 (7th Cir. 2001) ("The home equity line of credit was a

seven-year open-end loan.").  The loan at issue here is a "Home Equity Line of Credit," it covers

a "revolving line of credit,"[6] has a "credit limit," a "draw period," and a periodic "finance

charge."  (ECF No. 93-13 at 1-2.)  The loan agreement also accounts for annual fees and

overlimit charges.  (ECF No. 93-13 at 3.)  Finally, the Disbursement Request and Authorization

for the loan specifies that "this is a variable rate disclosable Open-end Line of Credit Loan."

(ECF No. 93-10 at 2.)

       In *Nelson*, the Court found that "at least some courts have deemed open-ended home

equity credit lines to be 'closed-end' transactions for HOEPA purposes, where . . . the entirety of

the credit line is paid in a lump sum cash payout at closing."  *Nelson*, 707 F. Supp. 2d at 313 n.6.

This is because of the "intertwined nature" of the mortgage and the home equity line of credit

and the parties' intent that the funding should be aggregated.  *Id.* at 313-14.  Here, however, the

defendant notes that "the first $100,000 amount was not tied to his home purchase although

secured by the real property and the second $100,000 loaned by Chase to Shahid was unrelated

to the purchase of his home secured by real property."  (ECF No. 93-23 at 18 n.14.)

Accordingly, the mortgage and the Consolidated Note were not "intertwined" like the loans in

*Nelson*.

---

[6] A revolving line of credit is generally deemed an open-end transaction.  *Nelson,* 707 F. Supp. 2d at 313 n.6.

In an effort to demonstrate that the *Nelson* exception applies, the defendant notes that "the full $200,000 was issued to him" as a lump payment. (ECF No. 93-23 at 20.) That the defendant chose to withdraw the maximum principal amount as soon as he got the loan does not mean that the parties did not envision repeat transactions. The Consolidated Note is clear: "You may borrow against the Credit Lien, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Line." (ECF No. 93-13 at 1.) Because Chase envisioned repeat transactions, the Consolidated Note is an open-ended home equity line of credit.[7] Since HOEPA does not apply to the Consolidated Note, there is no need to address the parties' arguments regarding the points and fees paid by the defendant.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is granted, the defendant's cross-motion for summary judgment is denied and the plaintiff's motion to strike the defendant's amended answer is denied as moot.

"Pursuant to [RPAPL §1321], the trial court has the authority to compute the amount owed or appoint a referee to do the same." *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384, 2016 WL 6902480, at *4 (S.D.N.Y. Nov. 22, 2016) (appointing a referee to calculate damages and sell the property after awarding summary judgment to plaintiff in a foreclosure action); *see also CIT Bank, N.A. v. Langley*, No. 17-CV-1548, 2019 WL 6050258, at *6 (E.D.N.Y. Nov. 15, 2019) ("[U]pon awarding summary judgment to a plaintiff in a foreclosure action, the RAPL allows for the appointment of a referee."). The plaintiff is therefore directed, within fourteen days, to file a proposed judgment of foreclosure providing for a sale of the Property and

---

[7] HOEPA was "later expanded by Dodd-Frank to include purchase-money mortgages and open-end credit plans (i.e., home equity lines of credit)." *Gustavia Home, LLC v. Rice*, No. 16-CV-2353, 2016 WL 6683473, at *4 (E.D.N.Y. Nov. 14, 2016) (citing 15 U.S.C. §§ 1639, 1602(bb)), which demonstrates that it did not cover those loans when the plaintiff got the loan at issue here.

requesting the appointment of a proposed referee to calculate the total amount owed to the

plaintiff, effectuate the sale, and disperse funds from such a sale.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
        September 30, 2022